UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> )<br>v.    )<br> )<br> )<br>JOSHUA HARTNESS,     )<br>   Defendant  ) | Case No.   2:24-cr-00141-cr |

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**MOTION FOR A DOWNWARD VARIANCE**

NOW COMES Defendant Joshua Hartness, through counsel, Emily Kenyon and Carmen Brooks and the Office of the Federal Public Defender, District of Vermont, and hereby files the following sentencing memorandum. Mr. Hartness requests a prison sentence of a year and a day, followed by 10 years of supervised release.

As a person with no criminal history and a professional background in law enforcement, the past nine months of pre-trial detention on the other side of the fence, is the longest time Mr. Hartness has spent inside a detention facility. In light of his personal and professional history, his in-custody conduct while awaiting resolution of the case, and the particular facts of his charges, a sentence of a year and a day would satisfy the need for a punishment that is "sufficient, but not greater than necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(1),(2). Mr. Hartness acknowledges that any time he has already served does not begin to satisfy repairing the harm he caused to any victims, his family and friends, and the community at large.

**I.    Plea Agreement**

Mr. Hartness pleaded guilty to the single-count indictment, filed on December 19, 2024. ECF No. 1. Under the pertinent parts of the plea agreement, the parties agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the appropriate term the Court should impose is no more than 30

1

months, with a subsequent period of supervised release of 10 years. ECF No. 31 at ¶ 18. Additionally, the government agreed to: (1) not prosecute Mr. Hartness in the District of Vermont for any other criminal activity based on conduct described in the factual stipulations of the plea agreement; and (2) recommend acceptance of responsibility - including a third point, if eligible. *Id.* at ¶ 16.

## II.  Sentencing Guidelines

### a.  Base Offense Level is 28 (USSG § 2G2.2(a)(1))

Mr. Hartness agrees with the probation officer that the base offense level for the sole count of conviction is 18. *See* PSR at ¶ 26.

### b.  Specific Offense Characteristic (USSG § 2G2.2(b)(2))

Based on an expert opinion provided by the government, Mr. Hartness agrees the government has proved by a preponderance of the evidence that this offense involved the possession of material involving a minor who had not attained the age of 12. Thus, a two-level enhancement is added. *See* PSR at ¶ 18, 27.

### c.  Specific Offense Characteristic (USSG 2G2.2(b)(6))

Mr. Hartness agrees with probation that the use of KIK, an online interactive application, qualifies as use of an interactive computer service. Thus, a two-level enhancement is added. *See* PSR at ¶ 28.

### d.  Specific Offense Characteristic (USSG 2G2.2(b)(7)(A))

Mr. Hartness agrees with probation that the proper estimate of child sexual assault material (CSAM) on his phone is between 10 and 150 images. Thus, a two-level enhancement is added. *See* PSR at ¶ 29.

e.  **Acceptance of Responsibility Adjustment (USSG § 3E1.1(a), (b))**

Mr. Hartness cooperated with law enforcement and pleaded guilty in a timely manner. He admitted his guilt as part of the plea agreement, as part of his plea colloquy, and during the pre-sentence interview with the probation officer. Thus, he is entitled to a three-level reduction per USSG § 3E1.1. *See* PSR at ¶¶ 24, 35-36.

f.  **Mr. Hartness is a Criminal History Category I**

Mr. Hartness agrees with probation that, due to his complete lack of any criminal convictions, he is in a criminal history category I based on 0 criminal history points. *See* PSR at ¶¶ 39-43.

g.  **Mr. Hartness' Guideline Range**

Mr. Hartness' advisory Guideline Range, based on a total offense level of 21 and a criminal history category of I is 37-46 months. *See* PSR at ¶ 72.

III.  **Mr. Hartness requests a sentence of 12 months and one day at a facility near his family and fiancée in Massachusetts.**

A sentence of a year and a day, followed by 10 years of supervised release, is a sufficient sentence under the factors of 18 U.S.C. § 3553(a).

a.  <u>Mr. Hartness' deep ties to his community and lack of criminal history supports a downward variance.</u>

Mr. Hartness is 45-years-old, the youngest of three. Mr. Hartness was born in Massachusetts. With the exception of being stationed in Texas as part of his employment with the United States Border Patrol (USBP), Mr. Hartness has spent his entire life within driving distance of his childhood home and parents. *See* PSR at ¶ 49. Mr. Hartness' relationship with his family remained close across childhood, adulthood and geography; Mr. Hartness takes his role as a brother seriously. For example, Mr. Hartness made the deliberate choice to travel to see his sister, Ashley Parusa, as she moved from state to state for her job as a marine biologist. "[Joshua]

made sure to visit me in each of these locations, sometimes to 'approve' of my new neighborhood and other times just to say Hi." *See* Exhibit A: Letter from Ashely Parusa.

> i.  *Mr. Hartness has lived a life of service.*

The Boy Scouts of America (now known as Scouting America) was a significant portion of Mr. Hartness' childhood and helped shape his desire to help others. "[Joshua] cares deeply about those around him. He pursued work that allowed him to use skills and values he learned at home, Scouts (becoming and (sic) Eagle Scout), and church." *See* Exhibit E: Letter from Kristin Hartness. Boy Scouts gave Mr. Hartness life-long friends who have remained steadfast by his side through this case. Mr. Hartness' childhood friend, Timothy Menard, who has known Mr. Hartness for 40 years writes, "[Josh and I] were very active in the boy scouts and became eagle scouts together." Mr. Menard continues, "Throughout our friendship, I have consistently found Josh to be very intelligent, honest, respectfully, and compassionate." *See* Exhibit G: Letter from Timothy Menard.

While attending Syracuse University, Mr. Hartness was seriously injured rock-climbing. *See* PSR at ¶ 61. Mr. Hartness made a choice not to allow this trauma to send him into addiction or other dangerous behavior. Instead, he worked in retail as he navigated his way to what came next. Growing up deep in the boy scout community and as the only son of veteran Army father, it is of little surprise that Mr. Hartness' path eventually brought him to law enforcement as an agent with the USBP; he attended the academy in 2009. *See* PSR at ¶ 65. Until his arrest, Mr. Hartness lived in New Hampshire while commuting to his assigned station in Vermont. "[Joshua] takes great pride in his career and has worked hard to become a highly trained and trusted member of his team." *See* Exhibit C: Letter from Debra Thompson.

> ii. *Mr. Hartness' friends and family remain supportive, while acknowledging this crime.*

Mr. Hartness' friends and family members remain incredibly supportive of him despite the seriousness of his crime. "When [Joshua] emerges, I and his sister, and his friends, including the two other Eagle Scouts who came to his rescue and likely saved his life after the fall are going to be here for him again." *See* Exhibit B: Letter from Dana Hartness (Mr. Hartness' father); *see also* Exh. A ("We have always been a close family, supporting each other the best ways we can. This situation will prove no different as we will support him however necessary."); Exh. E ("I have been asked how/if I will support Joshua on his release as he rebuilds his life. The unhesitating answer is yes."); Exh. F ("… with the right rehabilitative programs at his disposal, along with the immeasurable support from his friends, family, and I, he will prevail once again and find ways to give back to his community …"). It is clear that Mr. Hartness' roots in the community remain deep and flourishing, providing him with support during his current tenure in-custody and through treatment upon his release. Those who know him best are confident that he will "use this experience to grow as a person." Exh. D, and be a "positive member of his local community and our society at large," Exh. B.

> iii. *Mr. Hartness has continued to serve his community while incarcerated*

During Mr. Hartness' time in custody, he has not received any disciplinary reports. To the contrary, Mr. Hartness has taken the time to learn a few words in Spanish and Mandarin in order to help and bring a smile to the faces of other inmates. He has assisted others in getting bibles for comfort and in learning how to navigate living in a jail.

b. <u>Mr. Hartness' pre-trial behavior demonstrates he is amenable to correction and treatment.</u>

When contacted by law enforcement at the Logan International Airport, Mr. Hartness willingly agreed to an interview, as did his fiancée, Natalie Olinger. As a law enforcement agent,

5

well aware of his rights, Mr. Hartness chose to turn over his phone and cooperate. Tellingly, Ms. Olinger also felt she could speak freely and there is no evidence Mr. Hartness discouraged her from speaking with or being honest with law enforcement. While Mr. Hartness did struggle while on pre-trial release, violating terms of release by misrepresenting his status on the application for a firearm he purchased, there is no evidence he attempted to evade law enforcement. The lack of disciplinary reports, and Mr. Hartness' willing, timely return to custody following his mother's funeral is a real-life demonstration of his choice to accept punishment and correction gracefully.

Since coming back into custody on March 28, 2025, Mr. Hartness has devoted a significant amount of time to taking any and all classes available to him. *See* Exhibit I. The certificates attached to this filing do not include the approximately 10 additional certificates Mr. Hartness has earned in the past few weeks.

    c. <u>A sentence of a year and a day is sufficient, but not more than necessary to achieve the statutory goals of punishment</u>

A sentence of a year and a day, followed by 10 years of supervised release, would achieve the purposes laid out by Congress in 18 U.S.C. § 3553(a)(2). Prior to these charges, Mr. Hartness had no criminal interactions with law enforcement or the courts; in fact, he was on the other side of the aisle. For an individual such as Mr. Hartness, a lengthy sentence is not only a personal deterrent, but a strong sign to the community that offenses with vulnerable victims are taken extremely seriously. In addition to his personal attestation to never reoffend, due to his age, Mr. Hartness is at significantly lower risk of recidivism.[1]

---

[1] Depart of Justice, Bureau of Justice Statistics, "Recidivism of Prisoners Released in 34 States in 2012: a 5-Year Follow-up Period (2012-2017)"; https://bjs.ojp.gov/library/publications/recidivism-prisoners-released-34-states-2012-5-year-follow-period-2012-2017, July 2021, access date: 25 November 2025.

## Conclusion

Mr. Hartness' proposed sentence achieves the goals of 18 U.S.C. 3553(a)(2), while acknowledging the extreme seriousness of the crime, Mr. Hartness' age, lack of any significant prior criminal, continuous ties to the community, cooperation with law enforcement, and low risk to reoffend. Mr. Hartness has stipulated to paying restitution as ordered by the Court. With the goal of compensating any victims, Mr. Hartness requests this Court prioritize restitution over ordering any additional fine.

Dated: December 5, 2025                    Alejandro B. Fernandez
                                           FEDERAL PUBLIC DEFENDER


                                    By:    /s/ Carmen Brooks
                                           Carmen Brooks
                                           Assistant Federal Public Defender
                                           Office of the Federal Public Defender
                                           District of Vermont
                                           95 Pine Street, Suite 150
                                           Burlington, Vermont 05401
                                           (802) 862-6990
                                           Counsel for Joshua Hartness


                                    By:    /s/ Emily Kenyon
                                           Emily Kenyon
                                           Assistant Federal Public Defender
                                           Office of the Federal Public Defender
                                           District of Vermont
                                           95 Pine Street, Suite 150
                                           Burlington, Vermont 05401
                                           (802) 862-6990
                                           Counsel for Joshua Hartness